**KENTUCKY BAR ASSOCIATION,**
**Movant**

v.

**Curtis Donald BRITT, Respondent.**

**No. 2012–SC–000670–KB.**

Supreme Court of Kentucky.

March 21, 2013.

---

### OPINION AND ORDER

The Kentucky Bar Association has petitioned this Court to impose reciprocal discipline against Curtis Donald Britt[1] under Kentucky Supreme Court Rules (SCR) 3.435(4) because he has been disciplined in Ohio.

In October 2011, the Ohio Supreme Court entered an Order on Certified Report by the Board of Commissioners on Grievances and Discipline of the Supreme Court, suspending Britt from the practice of law indefinitely. The facts and rule violations were not in dispute in the Ohio proceeding because the parties filed an agreed stipulation of facts and violations.

### I. FACTUAL BACKGROUND.

#### A. Sonya Weaver.

Britt had an agreement with Total Bankruptcy, a website that provides a referral platform for bankruptcy attorneys, whereby he paid the company $65 per client referral. The Total Bankruptcy website stated that clients would receive a free evaluation by the local bankruptcy lawyer to whom they were referred.

Sonya Weaver was referred to Britt through Total Bankruptcy. She sought legal counsel regarding the feasibility of filing Chapter 7 bankruptcy. At her first appointment in February 2009, Weaver met with Kenneth Cooper, a non-lawyer

---

1. KBA member number 91685; bar roster address 1015 Middy Drive; Dayton, Ohio 45433. Britt was admitted to practice law in Kentucky in March 2007 and in Ohio in November 1999.

employed by Britt. Cooper advised Weaver that she would qualify for Chapter 7 bankruptcy despite her interest in three time-share properties. Cooper also advised her to discontinue payment of her credit card bills, quit her part-time job, and convert a CD to an IRA. Weaver relied on Cooper's advice, discontinuing payment of her credit card bills and quitting her job. That day, Cooper completed an intake form, noting Weaver's interest in the three time-shares.

Weaver signed an agreement calling for payment of a flat fee of $1,000 to Britt for handling her Chapter 7 bankruptcy. The agreement also called for the payment of miscellaneous filing fees. Britt did not review or sign the agreement until sometime in early March 2009. In payment of these fees, Weaver wrote Britt two checks, totaling $1,424. When Weaver dropped off the checks, she did not meet with Britt; but Britt's office assistant provided her with paperwork to complete to further the filing of her bankruptcy. In early March 2009, Weaver returned completed paperwork and bank records to Britt's office. And, at the direction of Britt's office assistant, Weaver completed an online credit-counseling course to satisfy a court mandate for bankruptcy petitioners.

Britt met with Weaver for the first time in April 2009. At this brief meeting, he informed her that a Chapter 7 bankruptcy might not be viable because of her ownership interest in certain property, including the time-shares. Britt requested additional information from Weaver to allow him to make a final determination. Several days later, Britt and Weaver met again; and she provided him with the documentation he requested. At this brief meeting, Britt confirmed that Chapter 7 was not a viable option for her given her interest in property. Weaver expressed dissatisfaction that because of her reliance on Cooper's flawed advice, she was two months behind on her credit card payments. Britt suggested that she contact her creditors to set up payment plans.

In April 2009, Weaver dismissed Britt from her case and requested he return her file, provide an itemized statement of the legal services rendered, and return any unearned fees. In late May 2009, Britt sent Weaver a check for $499, which represented $299 for the filing fee and $200 in unused legal fees. He failed to include an itemization of the legal services rendered and failed to return her file. Britt kept no contemporaneous time records in Weaver's case. Britt maintained that he was due the $925 that he retained based on the following: two hours of direct consultation with Weaver (billed at $225 per hour), one hour of file review and research (billed at $225 per hour), administrative work performed by his office assistant (billed at a total of $150), and reimbursement for the $50 fee for the credit counseling course.

## B. Craig Smith.

In May 2010, Britt undertook representation of Craig Smith in a Chapter 7 bankruptcy matter. Britt received a $299 filing fee and $800 retainer from Smith. Britt deposited the retainer and filing fee from Smith directly into his operating account. Thereafter, Britt failed to communicate with Smith, failed to respond to his inquires, and failed to file his petition, Britt's delay in filing the petition was due, in part, to the fact that he had already spent Smith's filing fee on other matters not related to Smith's case; and Britt no longer had sufficient funds to file the petition. Britt was only able to file Smith's petition when he eventually received a retainer and/or filing fee from a different matter and misapplied those monies to pay Smith's filing fee.

## C. Neil Frazier.

In October 2009, Neil Frazier retained Britt to represent him in dissolution, paying him an $800 retainer. Frazier later paid Britt a $250 filing fee. Britt deposited Frazier's retainer and filing fee directly into his operating account. In October 2010, after Britt's repeated failure to communicate with Frazier and Britt's failure to file the dissolution, Frazier dismissed Britt. Britt failed to refund Frazier's retainer or filing fee because he had expended the funds on other matters.

## D. Receipt and Expenditure of Client Fees and Failure to Maintain a Trust Account.

Britt admitted that although he had a trust account, he did not use it. It was his regular practice to deposit all client monies, whether earned or unearned, into his office operating account. Britt also admitted that he accepted employment from between 24 and 30 additional bankruptcy clients, taking retainers and filing fees from them, but that he had failed to file their petitions and had spent the clients' fees on matters other than their cases.

The Cincinnati Bar Association discovered that Britt actually accepted over $40,000 in retainers and filing fees from 42 clients. Those retainers and filing fees were deposited into Britt's operating account. None of the funds were deposited into a trust account. Britt used funds deposited into his operating account from the clients, in part, for his own purposes without regard to whether any such funds had been earned.

Only after initiation of the disciplinary proceedings did Britt take steps to alert the clients that he had not filed their bankruptcy petitions because of his conversion of their fees. At the time of the Board of Commissioner's report, Britt had made no direct restitution to any of the clients; but he had paid $1,000 a month to a local bankruptcy attorney as part of an arrangement to have the attorney complete the work for which some of the clients paid Britt.

## E. IRS Issues.

Two Internal Revenue Service levies were filed against Britt in the Bankruptcy Court because of his failure to withhold federal taxes or pay unemployment taxes. The levies totaled $16,672.92. So fees earned by Britt that were to be paid by the Bankruptcy Trustee were paid to the IRS.

## II. VIOLATIONS OF THE OHIO RULES OF PROFESSIONAL CONDUCT.

In its report, the Board of Commissioners on Grievances and Discipline determined that Britt violated the following Ohio Rules of Professional Conduct:

- Rule 1.1, by failing to provide Weaver with competent representation as a result of his flawed office intake and review process (akin to SCR 3.130–1.1);
- Rules 1.1, 1.3, and 1.4, by failing to provide diligent, prompt, and competent representation to his clients (akin to SCR 3.130–1.1, 1.3, and 1.4);
- Rule 1.4, by failing to inform his clients of the status of their cases (akin to SCR 3.130–1.4);
- Rule 1.5, by charging Weaver an excessive fee (akin to SCR 3.130–1.5);
- Rules 1.15(a) and (c), by failing to properly segregate client funds from his own funds in a trust account (akin to SCR 3.130–1.15(a) and (e));
- Rules 5.3(b) and 5.5(a), by aiding in the unauthorized practice of law through his failure to properly super-

vise Cooper (akin to SCR 3.130–5.3(b) and 5.5(a));

- Rule 7.1, by failing to provide Weaver with the free initial consultation that the Total Bankruptcy website promised (akin to SCR 7.15);
- Rule 8.4(c) and (d), by converting client funds (Ohio Rule 8.4(c) is akin to SCR 3.130–8.4(c), but there is no direct corollary in the SCR to Ohio Rule 8.4(d)[2]); and
- Rule 8.4(h), by engaging in conduct that adversely reflects on his fitness to practice law (the KBA cites to SCR 3.130–8.4(c), but there is no direct corollary to Ohio Rule 8.4(h)[3]).

The Ohio Supreme Court suspended Britt indefinitely and ordered him to: (1) provide documentation of all funds received from various clients; (2) make restitution to those clients, or their designated payees, in the aggregate amount of $2,000 per month until restitution is paid in full; and (3) provide a monthly accounting of all restitution payments made under the order. Any future reinstatement was conditioned upon Britt filing proof of full compliance with the conditions of restitution set forth in the order and completion of twelve hours of continuing legal education (CLE) in law office and trust account management, in addition to the general CLE requirements. The court further ordered that upon reinstatement, Britt would serve one year of monitored probation.

In December 2012, the KBA moved this Court to issue an order requiring Britt to show cause why identical reciprocal discipline should not be imposed under SCR 3.435. A show cause order was issued on December 20, 2012. Britt failed to file a response, so the issue of what, if any, discipline to impose is now ripe for review by this Court.

Under SCR 3.435(4), Britt is subject to identical discipline within this Commonwealth unless he "proves by substantial evidence: (a) a lack of jurisdiction or fraud in the out-of-state disciplinary proceeding, or (b) that [the] misconduct established warrants substantially different discipline in this State." The Ohio Supreme Court's order, as a "final adjudication in another jurisdiction that an attorney has been guilty of misconduct[,] shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this State."[4]

Seeing no reason why Britt should not be subjected to identical discipline in this Commonwealth under SCR 3.435, the Court ORDERS:

1) The Kentucky Bar Association's petition for reciprocal discipline is GRANTED. As of the date of this Order, the Respondent, Curtis Donald Britt, is suspended indefinitely from the practice of law in the Commonwealth of Kentucky and shall not seek reinstatement for two years;

2) In accordance with SCR 3.450, Respondent is directed to pay any costs associated with these disciplinary proceedings against him, should there be any, and execution for such costs may issue from this Court upon finality of this Opinion and Order; and

3) Should Respondent currently have any clients, under SCR 3.390, he shall, within ten days from the entry of this Opinion and Order, notify all

---

2. Ohio Rule 8.4(d) states that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

3. Ohio Rule 8.4(h) provides that it is professional misconduct for a lawyer to "engage in any other conduct that adversely reflects on the lawyer's fitness to practice law."

4. SCR3.435(4)(c).

clients, in writing, of his inability to represent them and notify all courts in which he has matters pending of his suspension from the practice of law, and furnish copies of said letters of notice to the Office of Bar Counsel. Furthermore, to the extent possible and necessary, Respondent shall immediately cancel and cease any advertising activities in which he is engaged.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., sitting. All concur.

ENTERED: March 21, 2013.

/s/ John D. Minton, Jr.

